## TOWN OF CONCORD *v.* PORTSMOUTH SAVINGS BANK.

An act of the general assembly of the State of Illinois in force March 7, 1867, authorized towns acting under the Township Organization Law of the State — of which the town of Concord was one — to appropriate money to aid in the construction of a certain railroad, to be paid to said company as soon as its track should have been located and constructed through such towns. At a popular election held in the town of Concord, on the 20th of November, 1869, the proposition to make such appropriation was submitted to the legal voters thereof, as required by the act; and the town voted the appropriation, provided the company would run its road through the town. On the 20th of June, 1870, the company gave notice of its acceptance of the donation; and on the 9th of October, 1871, town bonds representing such donation were issued by the supervisor and town-clerk. *Held,* 1. That under the statute the town could not make an appropriation or donation in aid of the company until its road was located and constructed through the town. 2. That the constitution of the State, which came into operation July 2, 1870, annulled the power of any city, town, or township, to make donations or loan its credit to a railroad company, and, after that date, rendered the act of 1867 ineffective. 3. As the town had no authority to make a contract to give, and the acceptance by the company was an undertaking to do nothing which it was not bound to do, before the authority of the town to make or to engage to make a donation came into existence, no valid contract arose from such offer and acceptance. 4. That the bonds so issued are void.

ERROR to the Circuit Court of the United States for the Northern District of Illinois.

This was an action of assumpsit to recover the amount of the coupons attached to certain bonds issued by the supervisor and town-clerk of the town of Concord, in the State of Illinois.

The act of the general assembly of the State of Illinois, pursuant to which the bonds recite that they were issued, provides, —

" That all incorporated cities and towns acting under the township organization law, which lie wholly or partly within twenty

miles of the east line of this State, and also between the city of Chicago and the southern boundary of Lawrence County, be and the same are hereby severally authorized to appropriate such sum of money as they may deem proper to the Chicago, Danville, and Vincennes Railroad Company, to aid in the construction of the road of said company, to be paid to said company as soon as the track of said road shall have been located and constructed through said city, town, or township, respectively: *Provided, however*, that the proposition to appropriate moneys to said company shall be first submitted to a vote of the legal voters of said respective townships, towns, or cities, at a regular, annual, or special meeting, by giving at least ten days' notice thereof; and a vote shall be taken thereon by ballot at the usual place of election; and if the majority of the votes cast shall be in favor of the appropriation, then the same shall be made, otherwise not."

" SECT. 2. The authorities of said townships, towns, or cities, respectively, are hereby authorized and required to levy and collect a tax, and make such provisions as may be necessary for the prompt payment of the appropriation under the provisions of this law."

Pursuant to a notice for that purpose, an election was held on Nov. 20, 1869, and the legal voters of the town of Concord voted to levy a tax on the taxable property of said town, amounting in the aggregate in two years — to be levied and collected as other taxes — to the sum of $25,000, to be donated to said railroad company, provided said company run the said railroad through the village of Concord, or on its boundaries, and to and through the town of Sheldon, in Sheldon township.

On the twentieth day of June, 1870, the railroad company filed in the town-clerk's office a written notice of the acceptance of the donation, the same being addressed to the supervisor and town-clerk.

The Constitution of Illinois, which took effect July 2, 1870, ordains as follows: —

" No county, city, town, township, or other municipality, shall ever become subscriber to the capital stock of any railroad or private corporation, or make donation to, or loan its credit in aid of, such corporation: *Provided, however*, that the adoption of this article shall not be construed as affecting the right of any such municipality to make such subscriptions, where the same have been

authorized, under existing laws, by a vote of the people of such municipalities prior to such adoption."

On the ninth day of October, 1871, the supervisor and town-clerk executed bonds of the following tenor: —

" UNITED STATES OF AMERICA, *State of Illinois:* —

" No.    .]    CONCORD TOWNSHIP RAILROAD BOND.    [$1,000.

" Know all men by these presents, That the township of Concord, in the county of Iroquois and State of Illinois, acknowledges itself to owe and be indebted in the sum of $1,000, lawful money of the United States of America, which sum of money the said township of Concord promises to pay to the bearer at the Mechanics' National Bank, Chicago, on the first day of June, in the year 1881, with interest thereon at the rate of ten per centum per annum, which interest shall be payable yearly on the first day of June in each year, at the Mechanics' National Bank of the city of Chicago, upon presentation and delivery of the warrants or coupons severally hereto annexed, until the payment of the said principal sum.

" This bond is issued under and by virtue of a law of the State of Illinois, to authorize cities, towns, or townships lying within certain limits to appropriate moneys and levy a tax to aid the construction of the Chicago, Danville, and Vincennes Railroad, and the faith of said township of Concord is hereby pledged for the payment of said principal sum and interest as aforesaid."

And they were delivered to the company Oct. 17, 1871.

The case was tried below without the intervention of a jury. The court found for the plaintiff, and gave judgment accordingly, whereupon the defendant brought the case here.

Argued by *Mr. George H. Williams* for the plaintiff in error, and submitted on printed briefs by *Mr. Isaac G. Wilson* and *Mr. Sanford B. Perry* for the defendant in error.

MR. JUSTICE STRONG delivered the opinion of the court.

The bonds to which the coupons in suit were attached purport to have been made under legislative authority given to the town officers by the act of March 7, 1867. Their recitals make direct reference to that act by its title, which is set forth at length, with an averment that they were issued under and by virtue of it. The primary question, therefore, is, whether that statute did in reality give to the supervisor and clerk of

the town power to execute and deliver town bonds on the
ninth day of October, 1871 (when the bonds were in fact
issued), as an appropriation or donation to the railroad com-
pany. The first and second sections are the only ones to
which reference need be made. By the first, it was enacted
that certain incorporated towns and cities, and towns acting
under the township organization law (among which it is con-
ceded the town of Concord was one), should be and were
severally authorized to appropriate such sum of money as they
might deem proper, to the Chicago, Danville, and Vincennes
Railroad Company, to aid in the construction of the road of
said company; to be paid to the company as soon as the track
of said road should have been located and constructed through
said city, town, or township respectively. To this was attached
the following proviso : —

"*Provided, however,* that the proposition to appropriate moneys
to said company shall be first submitted to a vote of the legal
voters of said respective townships, towns, or cities, at a regular
annual or special meeting, by giving at least ten days' notice
thereof; and a vote shall be taken thereon by ballot at the usual
place of election; and if the majority of votes cast shall be in favor
of the appropriation then the same shall be made, otherwise not."

The second section empowered and required the authorities
of said municipalities to levy and collect a tax, and make such
provisions as might be necessary for the prompt payment of
the appropriation under the provisions of the law.

The authority given to the town of Concord by this statute
was not to subscribe to the stock of the railroad company, but
to make an appropriation or donation in aid of the construction
of the road; and even that donation was not permitted to be
made until after the completion of the location and construction
of the road through the town. It has been strenuously insisted
during the argument that the act conferred no power upon the
town to make an appropriation or donation by the issuing of
bonds or certificates of indebtedness. It is said that other pro-
vision was made for the donation, — provision by the levy and col-.
lection of a tax. We do not care, however, to discuss this matter,
for in the view which we have of the case it is quite immaterial.

A popular election having been held, and a majority of votes cast at the election having been in favor of the appropriation, it may be conceded that payment of the appropriation could lawfully have been made in town bonds instead of money, if the donation itself was authorized. The real question is, whether the authority to make the donation existed when it was made. The act of the legislature of 1867 may have been authority for a donation at any time prior to July 2, 1870, and no authority at all afterwards. And such, we think, it was. The popular vote in favor of an appropriation was on the 20th of November, 1869; but it was not itself an appropriation or donation, and the town was not authorized to make it until the railroad was located and constructed through the town. Before that time, and before any attempt at a donation or appropriation was made, the authority to make it was withdrawn. If no effect be attributed to the rescinding vote of June 30, 1870, the new constitution of the State, which came into operation on the 2d of July, 1870, annulled, we think, the power of municipalities to make donations to railroad companies. It ordained that, —

"No city, town, township, or other municipality, shall ever become subscribers to the capital stock of any railroad or private corporation, or make donation to, or loan its credit in aid of, such corporation: *Provided, however*, that the adoption of this article shall not be construed as affecting the right of any such municipality to make such subscriptions, where the same have been authorized under existing laws, by a vote of the people of such municipalities prior to such adoption."

This article, in our opinion, makes a clear distinction between subscriptions to the capital stock of a railroad company, or a private corporation, and donations or loans of credit to such corporations. The latter are prohibited under all circumstances. The former may still be made, if they have been authorized by a vote of the people prior to the adoption of the constitution. A very able and ingenious argument has been submitted to us, aiming to show that in fact the article makes no such distinction, and that donations and subscriptions are put upon the same footing; but we cannot yield to it our assent. No matter what may have been the intention of the mover of the proviso, the intent of the framers of the article, and of the people

adopting it, must be gathered from the article itself. There was reason for the distinction. For subscriptions to capital stock the municipality got something for which there was at least a possibility of return, more than was possible in the case of donation. In both cases public convenience may have been contemplated: but in the one, more than that may have been contemplated and expected; and this may have been the prevailing motive for assent to a subscription. It cannot be doubted that a subscription would have been voted in many cases where a donation, or a loan of credit, would not have been.

If, then, the State constitution prohibited donations to railroad companies, made after its adoption, the act of the legislature of 1867 became ineffective after July 2, 1870. After that date the power no longer existed in the municipality.

We do not say that the new constitution could annul or impair any contract that was made between the town and the railroad company, during the time in which the town had authority to make it. A constitution can no more impair the obligation of a contract than ordinary legislation can. But the record exhibits no contract made before July 2, 1870. The town voted on the twentieth day of November, 1869, that it would make a donation, provided the company would run its railroad through the town. On the 20th of June, 1870, the company gave notice of its acceptance of the donation. But the town was not empowered to make the donation until the road was located and constructed through the town. It had no authority to make a contract to give. And the acceptance was an undertaking to do nothing which the company was not bound to do before the authority of the town to make a donation, or to engage to make a donation, came into existence. What is called the acceptance of the railroad company cannot be construed as an engagement to locate and build the railroad through the town. It amounted to no more than saying, " If we build our road through your town, we will receive your gift." There was, therefore, no consideration for the town's promise to give, even if the popular vote can be considered a promise. There was no contract to be impaired. A contract should be clearly proved before it invokes the protection of the Federal Constitution.

We conclude, then, that, at the time the donation was made, there was no authority in the municipality to make a donation to the railroad company, and consequently no authority to issue the bonds.   It follows that the bonds and coupons are void.

*Judgment reversed and new trial ordered.*