WADSWORTH *v.* ST. CROIX COUNTY.

*(Circuit Court, W. D. Wisconsin.* ——, 1880.)

1. MUNICIPAL BONDS—BOARD OF SUPERVISORS.—An act of the legisla-ture of the state of Wisconsin provided that the board of super-visors of the defendant county "shall have power, by resolution, to cause to be issued bonds * * * * * * * to an amount not exceeding fifty thousand dollars," "if a majority of the ballots cast" by the legal voters in said county "be 'for railroad aid.'" *Held,* where a majority of the ballots cast were "for railroad aid," that it still rested in the discretion of the board of supervisors whether such bonds should be issued.

*Aspenwall* v. *Com'rs of the County of Daviess,* 22 How. 364.
*Town of Concord* v. *Savings Bank,* 92 U. S. 625.

Demurrer to Complaint.

BUNN, D. J. This case stands upon a general demurrer to the complainant's bill. The suit is in equity, to compel the specific performance of an alleged contract on the part of the

county to issue bonds to aid in the construction of the Tomah & St. Croix, now the West Wisconsin, Railway. The acts and parts of acts under which the question arises are as follows:

GENERAL LAWS OF WISCONSIN—1864—PAGE 368.

*Chapter 307.*

[Published April 20, 1864.]

An act to authorize certain counties therein named to aid in the construction of a railroad from Tomah to Lake St. Croix, by the Tomah & Lake St. Croix Railroad Company.

*The people of the state of Wisconsin, represented in senate and assembly, do enact as follows:*

Section 1. At the annual town meeting for the election of town officers, to be held in and for the different towns comprising the counties of St. Croix, Dunn, Chippewa, Pierce, Eau Claire, Buffalo, Clark, Trempealeau, Jackson, Pepin, and Monroe, in the year one thousand eight hundred and sixty-four, or at any subsequent annual town meeting or general election held in each and any of said towns comprised in any one of said counties, the legal voters of said counties, or either of them, may deposit ballots, written or printed, in words as follows: "For railroad aid," or "against railroad aid." Such ballots shall be deposited in a separate box provided for that purpose by the inspectors of election, and such ballots shall be considered as the votes of the legal voters upon such question, and shall be counted, canvassed, and returned to the proper officers as in other elections, and as provided under the election laws of the state applicable thereto: *provided,* ten days' notice of such submission shall be given by the sheriff of said counties, respectively, by posting in each town in the county, in four public places, a written or printed notice stating that a submission of the question of railroad aid will be had.

Sec. 2. If a majority of the ballots cast in any of said counties be "for railroad aid," the county board of supervisors of said county shall have power, by resolution, to cause

to be issued bonds of a denomination of one hundred dollars to one thousand dollars each, to an amount not exceeding fifty thousand dollars for each of said counties, payable thirty years after the date thereof, with interest at the rate of seven per centum, payable semi-annually in the city of New York, at such place as the treasurer of the state shall designate.

\*        \*        \*        \*        \*        \*        \*

Sec. 8. If, from any cause, the said question is not submitted to the electors of either of said counties at the annual town meeting, on the first Tuesday of April, one thousand eight hundred and sixty-four, it shall be submitted at any election or town meeting thereafter, when any ten electors of said county shall file with the clerk of the county board of supervisors a petition therefor; and, when such petition is thus filed, the said clerk shall give notice of the proposed submission of such question in the same manner as notices of general elections are now required by law to be given by the sheriff.

Sec. 9. This act shall take effect and be in force from and after its passage and publication.

Approved April 1, 1864.

GENERAL LAWS OF WISCONSIN—1865—PAGE 380.

### Chapter 279.

[Published May 20, 1865.]

An act to legalize the proceedings of certain town meetings held in the several towns of St. Croix county.

*The people of the state of Wisconsin, represented in senate and assembly, do enact as follows:*

Section 1. The special town meetings held in the several towns of St. Croix county, on the twenty-second of June, 1864, and the canvass of the votes given thereat, under the acts passed above, entitled for the purpose of aiding in the construction of the Tomah & Lake St. Croix Railroad, and of the St. Croix & Lake Superior Railroad, are hereby declared to be legal and valid in all respects, as if the said laws in

relation to said elections and canvass of votes had been fully and in all respects complied with.

Sec. 2. The said board of supervisors of St. Croix county are hereby authorized and empowered to issue bonds to the amount of twenty-five thousand dollars to each of said railroad companies, in pursuance of said acts, for the purpose of aiding in the construction and completion of the same, in the same manner and with the like effect as if the said town meetings had been legally held, and the votes properly canvassed under said acts.

Sec. 3. This act shall take effect and be in force from and after its passage and publication.

Approved April 1, 1865.

## PRIVATE AND LOCAL LAWS—1872.

### Chapter 116.

[Published April 5, 1872.]

An act to repeal a portion of chapter 307 of the General Laws of 1864, entitled "An act to authorize counties therein named to aid in the construction of a railroad, from Tomah to Lake St. Croix, by the Tomah & Lake St. Croix Railroad Company."

*The people of the state of Wisconsin, represented in senate and assembly, do enact as follows:*

Section 1. So much of chapter 307 of the General Laws of 1864, entitled "An act to authorize certain counties therein named to aid in the construction of a railroad, from Tomah to Lake St. Croix, by the Tomah & Lake St. Croix Railroad Company," as authorizes the issue by the county of St. Croix and the county of Eau Claire of any bonds in aid of the construction of said railroad, is hereby repealed.

Sec. 2. All acts or parts of acts conflicting with the provisions of this act are hereby repealed.

Sec. 3. This act shall take effect and be in force from and after its passage.

Approved May 25, 1872.

Under chapter 307, Laws 1864, in the month of June, 1864, a petition was made and presented for a special election to be held in the several towns of St. Croix county, to vote on the proposition for railroad aid to the amount of $25,000. A meeting was held, pursuant to call, and a vote taken, which resulted in a majority vote in favor of such aid. Afterwards, there being some supposed irregularity in the holding of the meeting and canvassing the votes, chapter 279, Laws 1865, was passed. The supervisors never issued the bonds as they were empowered to do by the second section of the act of 1864; and the question is whether the transaction of the vote, in connection with the several statutes, and the fact that the road has been built, constitute a contract which the plaintiff has the right to have specifically performed.

I think the proper construction of section 2 of the act of 1864 is that it vests a discretion in the board of supervisors, after a favorable vote has been had, to cause to be issued bonds to an amount not exceeding $50,000. If the statute had authorized the people to vote the amount, and then provided the board might issue the bonds for the amount so voted, perhaps it would be the duty of the board to issue the bonds, though the law were permissive. But, under this statute, the people were only authorized to vote on the question of aid either "for or against." They were not authorized to vote any particular amount. If they voted for railroad aid, then the board of supervisors were empowered to determine the amount, not exceeding $50,000, and cause the bonds to be issued.

It seems clear that the action of the board, in fixing the amount by resolution and authorizing the issue of the bonds, is an essential part of the machinery by which the aid can be given; that the law vests a discretionary power, and that until the supervisors make their resolution there is no contract. The supervisors, and not the people, are the usual contracting power of the county, and it is not to be presumed that the legislature intended to take this power from the board, unless such intention is clearly expressed.

In this case the vote of the people, under the law, conferred the power on the board to make the contract, but did not constitute the contract itself. That power was still left with the board. It is claimed by complainant's counsel, in his argument upon the demurrer, (see page 11, printed brief,) that it was held by this court, in *Wadsworth* v. *County of Eau Claire,* that the complaint, which set up substantially the same facts as this, presented a proper case for equitable relief. I do not so understand the decision of the court. Indeed, the court had no occasion to decide that question. That was an action at law to recover damages by this same plaintiff against the county of Eau Claire, which had voted aid under the same statute, and the supervisors had refused to issue the bonds. A demurrer was interposed, and the case argued at the June term, 1876, before Judges Davis and Hopkins, and the demurrer sustained. There was no opinion filed, and the record does not disclose the ground of the decision. But it would appear, from the briefs of counsel, that the case was mainly argued and submitted upon the question as to whether or not the vote of the people to extend aid constituted a contract, in connection with the statute, in the absence of any resolution of the board authorizing the issue of the bonds. In sustaining the demurrer, the court necessarily decided that the complaint did not set up a cause of action. How the court might have held if the complaint prayed for equitable relief we can best judge from what was held afterwards, when the same case came before the court in that form. If there was a contract with the railroad company to issue the bonds, and a breach of that contract, as there assuredly was, if any such contract existed, by a failure to issue them, so that an action would lie to enforce a specific performance, it is difficult to see why an action at law will not lie for damages. After the demurrer in the action at law was sustained, the case was discontinued, and an action like this commenced, in December, 1876, on the chancery side, to compel a specific performance of the contract. The same plea was put in as here. The case was argued before his honor Judge Drummond, at the La Crosse term, in Sep-

tember, 1877, and the demurrer again sustained. An appeal from the decision was taken in the spring of 1878, to the supreme court, and the case is now pending in that court; so that, unless the statute of April 1, 1865, legalizing the proceedings of the several town meetings in St. Clair county, changes the aspect of this case, the question will appear to be *res adjudicata* in this court; and such I believe to be the fact, as I cannot see that the last-named statute helps the plaintiff's case.

It seems clear from the title of the statute, as well as from the provisions of sections 1 and 2, that the purpose is not to levy a tax upon the county or to make a contract for the county, but to simply cure the supposed defects and irregularities in the holding of the several town meetings, under the law, and in the canvassing of the votes thereat, so as to put the supervisors in the same condition of authority, in regard to the issuing of bonds to the extent of $25,000, that they would have been in if the said town meeting had been legally held and the votes properly canvassed. To give the act a larger meaning would be doing violence to the language of the title as well as that of the body of the act itself.

I think the case of *Aspenwall et al.* v. *Com'rs of the County of Daviess*, 22 How. 364, is an authority in point on the main question raised by this demurrer. In one important respect that case was a stronger one for the plaintiff than this. The bonds had been actually issued and sold by the company to parties who had no notice of their invalidity. It is stronger in another respect, that the law in that case made it the *duty* of the board of commissioners to subscribe for the stock, if a majority of the qualified voters determined in favor of the subscription. And yet the court in that case, on page 378, say: "It is insisted that the contract of subscription became complete when, at the election, a majority of the votes was cast in its favor, and did not require the form of a subscription on the books for the stock of the railroad company to make it obligatory upon the parties.  *  *  *  But the court is unable to concur in this view. It holds that a subscription was necessary to create a contract binding upon the county, on one side, to

take and pay the bonds; and upon the other, to transfer the stock and receive the bonds for the same. Until the subscription is made the contract is unexecuted, and obligatory upon neither party."

See, also, *Town of Concord* v. *Savings Bank*, 92 U. S. 625. Demurrer sustained.