# Partee *v.* Thomas and others.

*(Circuit Court, W. D. Tennessee.* April 24, 1882.)

1. **Equity—Jurisdiction—Clouds on Title—Trusts—Wills—Amendment of Bill—Rev. St. § 954.**

Although a federal court of equity, in Tennessee, may not have the same jurisdiction the state courts have to entertain a bill by a party out of possession to remove clouds from the plaintiff's title, it has undoubted jurisdiction to enforce the trusts of a will at suit of a *cestui que trust* who has been deprived of possession by a breach of the trust, and a bill framed under the state practice may be amended in its prayer to conform to that jurisdiction, and will not be dismissed for that defect.

2. **Same—Pleading—Imperfect Exhibit—Effect on Demurrer.**

The broad allegation of a bill that a trustee has been by decree of court substituted for the original trustee, who resigned, cannot be qualified on demurrer by reference to the decree itself, detached from the record of the proceeding, and found with the bill in this case, not even if it can be treated as an exhibit to the bill, where the bill promises to produce the record in evidence at the hearing.

3. **Will—Construction—Equitable and Legal Estates—" Use " and " Benefit."**

Where a testator devised property to his sons as trustees for his daughter, employing the words " and for her benefit and for her use," and directing that "after her death the whole legacy to be divided among her children, if any," and if she died without issue to the testator's other daughters, with power in the trustees, " if they think proper," to sell the property " for her benefit," and " to assist her," with similar devises to trustees for other daughters, " for their support and benefit," and " for her special use and benefit," *held,* that the daughter took an equitable life estate in the property, with remainders over, according to the directions of the will, and that the confusing employment of the words " use," " benefit," and the like, and the grant of the powers vested in the trustees, did not reduce her interest to a mere usufruct in their discretion.

4. **Same—Husband and Wife—Husband's Interest—Tennessee Code, § 2481.**

Where a wife has, under the trusts of a will, an equitable life estate in land, her husband has, at common law, a right to the rents and profits; but he being dead when the bill was filed, it becomes unnecessary to determine the precise effect of the statute of 1850 (Tennessee Code, § 2481) on his interest, where the marriage took place prior to the statute, as it does not affect the question of her right to file the bill to recover possession, in its relation to the statute of limitations, but only the extent of the relief to which she may be entitled, on the final hearing, in taking any account of the rents and profits that may be ordered.

5. **Trustees—Resignation—Discretionary Powers—Substituted Trustee.**

Where a will gave the trustees named power to sell the property devised to them in trust, " if they think proper, and it should so happen that some of the property ought to be sold for the benefit of the daughter, so as to buy her some negroes or other property to assist her," *held,* that the power was personal and discretionary in the trustees named, and, on their resignation and the substitution of a new trustee, did not pass to him.

6. MARRIED WOMAN—CONVEYANCE OF LANDS—POWER OF ATTORNEY—STATUTE
—CONSTRUCTION, ACT 1833, c. 92, § 7.

It is the settled law of Tennessee that a married woman can convey her lands
only by a deed duly executed by her and her husband according to the statute,
and that a power of attorney by her is void, and will not support a conveyance
by an attorney in fact; and the seventh section of the act of 1833, c. 92, does
not affect this rule of property, which is binding on the federal courts.
*Held,* therefore, where a husband, being a substituted trustee under a will
devising an equitable life estate to his wife, with remainder over to her chil-
dren or to her sisters, in default of issue, by a power of attorney jointly with
the wife conveyed the whole estate to a purchaser having notice of the trust,
that her interest did not pass, though the purchaser took the legal title
subject to the trusts of the will, and perhaps the husband's interest as hus-
band.

7. STATUTE OF LIMITATIONS—HUSBAND AND WIFE—TENNESSEE CODE, § 2481.

The act of 1850, (chapter 36, T. & S. Code, § 2481,) in any case, whether the mar-
riage was before or after the act, operates to save to the wife her remedy by bill
in equity to recover the land conveyed by her husband without her consent, by
deed, according to the statute for the conveyance of a married woman's lands,
notwithstanding a joint disseizin of the husband and wife, and notwithstand-
ing the bar of their joint action, until three years after her discoverture, except
where the bar had given the disseizor a title perfected by the lapse of time
before the passage of the act, or where there was an outstanding trustee capa-
ble of suing. *Held,* therefore, where a husband and wife, married prior to Jan-
uary 10, 1850, undertook by a power of attorney void as to the wife to convey
the wife's lands to a purchaser, who has been in adverse possession more than
seven years required by the statute of limitations to give title, and since 1852,
that the wife's remedy in equity to recover the lands was not barred where the
bill was filed within three years after the death of the husband, and this
whether the husband was estopped by his deed to sue or not, or whether his
interest as husband passed to the purchaser or not.

8. SAME—HUSBAND'S ESTOPPEL.

Where a husband, holding the legal title as trustee for his wife, owning an
equitable life estate in lands, undertakes, by a conveyance void as to her, to con-
vey the whole estate, legal and equitable, he is estopped by his deed to sue for
her, or jointly with her, to recover possession, and she is not, therefore, barred
by the statute of limitations of seven years if the bill be filed within three years
from the discoverture.

In Equity.    On demurrer.

The bill alleges that Daniel Cherry, by his will of May 9, 1843,
made provisions for his daughters, of whom the plaintiff Mosella D.
Cherry, afterwards married to Hiram A. Partee, who died in 1877,
was one.    It is under the ninth and eighteenth items of the will that
the plaintiff claims title to the lands described in the bill.    They read
as follows:

"Item 9. I give unto Norman T. Cherry and Calvin W. Cherry, as trustees
for my daughter, Mosella Dearbra Cherry, and for her benefit and for her use,
the following property named hereafter, viz.:   I give to said trustees, for use
aforesaid, 1,366 acres of land, lying, etc.; also one negro man, etc., [the will

here describes numerous slaves and other personal property;] and after the said Mosella's death the whole legacy to be divided among her children, if any, and if she should die without lawful issue, my will and desire is for the said property to be equally divided among my daughters Belinda F. Jones and Alumia A. Cherry, to them and their heirs forever."

"Item 18. It is my special will and desire that if my said sons, Norman T. Cherry and Calvin W. Cherry, who are the trustees for my daughters, Belinda F. Jones, Mosella D. Cherry, and Alumia A. Cherry, think proper, and if it should so happen that some of said property ought to be sold for the benefit of them, so as to buy them some negroes, or other property, to assist them, my will is for them to sell it, but never make any title to the purchaser till it is all paid for in full."

The will makes similar provision for the other daughters and the children of two that were dead, appointing other trustees for those, and has devises for the testator's wife and sons. It was duly probated and registered not long after its date. The trustees tendered their resignations by petition to the chancery court of Gibson county, and by decree of September 12, 1845, Hiram A. Partee, who had married Mosella, was appointed trustee in their place. Partee and his wife jointly executed an instrument of date November 28, 1848, appointing Citizen S. Wood their attorney in fact to sell the land, referring in it to the marriage of Partee with Mosella, the trusts of the will, and Partee's substitution by the court for the original trustees. This instrument was defectively acknowledged, but duly registered.

On October 11, 1852, Wood sold the land in controversy, by deed in the usual form, to the defendants' grantor, who went into possession, and that possession has been continued successively to the present time.

Partee died in December, 1877, and his widow filed this bill April 27, 1880, against the defendant and the plaintiff's children, the heirs at law of Partee, stating these facts, claiming title to the land, and praying that the power of attorney and the deeds, from that of Wood down to that to defendant, be cancelled as clouds on her title; that she be let into possession; for an account of rents and profits, and for general relief.

The bill is demurred to for want of equity, and the defences made are, a want of jurisdiction, title through deeds and through the statute of limitations.

There are seven other precisely similar bills, against all the occupants of the 1,366 acres of land, claiming through the attorney in fact; and as the defences were in all respects the same, they were

heard together, under an agreement that the judgment in this case should control in all.

Clapp & Beard and Taylor & Carroll, for plaintiff.

M. D. Caldwell, for defendants.

HAMMOND, D. J. There has grown up in Tennessee, without any statute such as exists in many of the states, a rule that a party out of possession may file a bill in equity to remove, as clouds upon his title, the deeds of an adversary claimant in possession, and thereby recover the land, or rents or profits, the rule being entirely the product of judicial decision. Almony v. Hicks 3 Head, 39, and numerous cases cited; 1 Meigs, Dig. (2d Ed.) p. 479, § 474. If this case were technically a bill to remove clouds from the plaintiff's title, the question whether a federal court of equity could maintain jurisdiction by reason of this local law would be presented for decision. But while the bill is obviously framed in view of the state practice, and prays only to cancel the defendant's deeds as clouds on the plaintiff's title, to be let into possession, and for an account of rents or profits, it is not a bill to remove clouds at all. It is, or should be, on the facts stated, a bill to declare and execute the trusts of the will, and secure to the plaintiff her equitable estate for life as against breaches of the trust alleged to have been committed by her trustee in his lifetime, by which the defendant has possessed himself of her life estate. The bill contains a general prayer for relief, which is sufficient to maintain it in its true character; but it may also be amended to conform its special prayer to its real purpose, and should not be dismissed for the defect mentioned. Rev. St. § 954; Bump, Fed. Proc. 664. It is like the interesting case of Estill v. Deckerd, 4 Bax. 497, where a bill prosecuted to remove clouds from plaintiff's title was rejected in that form, but remanded by the supreme court for amendment as a bill to execute the trusts of the will. The relief granted does not proceed upon the ground of annulling or setting aside the deeds, but is founded on the theory that the title passed to the defendant, and enures in equity to the benefit of the plaintiff. Silver v. Ladd, 7 Wall. 219, 228. And whenever there is an element of trust, our strictest rule of an adequate remedy at law does not apply. Oelrichs v. Spain, 15 Wall. 211, 228.

The remedy of a wife or widow to recover possession of her land, where her trustee, being her husband, has sold it, or his interest in it, is fully discussed by an eminent chancellor on the authority of the Tennessee cases, in Cantrell v. Davidson Co. 3 Tenn. Ch. 427. What precise limitations on these rules of equitable relief in the state

courts may be imposed on this court by probable inherent differences of jurisdiction, it is not necessary now to inquire. That inquiry could only arise in a case where she had a legal title, upon which she could maintain ejectment either jointly with her husband, or solely after his death, or where she had a trustee capable of suing for her. Here, if her contention be true, the defendant, claiming the ownership against her under their joint deed through the power of attorney, or else the other defendants, her husband's heirs at law, are her trustees by operation of law, and hold the legal title for her benefit, and it is to charge them as such that she applies to our equitable jurisdiction, and not to cancel their instruments of title as clouds on hers. In this view the jurisdiction is indisputable. 2 Spence, Eq. Jur. 844; 2 Washb. Real. Prop. (4th Ed.) p. 522, §§ 14, 15; Id. p. 515, §§ 25, 26; Id. p. 488, § 27. "Where a trustee has abused his trust," says the supreme court, "the *cestui que trust* has the option to take the original or the substituted property. Parties are sometimes remitted to a court of law, but this is never done where the remedy is not as effectual and complete there as the chancellor can make it. Equity sometimes takes jurisdiction on account of the parties, and sometimes on account of the relief to be administered." *May* v. *Le Clair*, 11 Wall. 236; *Duncan* v. *Jandon*, 15 Wall. 165; *Railroad Co.* v. *Durant*, 95 U. S. 576; *Bowen* v. *Chase*, 94 U. S. 812; *Villa* v. *Rodrigncz*, 12 Wall. 323; *Hume* v. *Beale*, 17 Wall. 336; *Adams* v. *Adams*, 21 Wall. 185; *Cook* v. *Tullis*, 18 Wall. 332; *Irvin* v. *Marshall*, 20 How. 558, 564; *Oliver* v. *Piatt*, 3 How. 333; *Gaines* v. *Chew*, 2 How. 619, 649; Bump, Fed. Proc. 423–427.

But it is strenuously argued that Partee, the plaintiff's husband, was never trustee, because, it is said, the chancery proceedings substituting him were inoperative for that purpose. If this be so, it does not affect the jurisdiction, as the result would be that the legal title passed to the heirs at law of Norman T. and Calvin W. Cherry, the original trustees, who are dead. These heirs could be brought in as parties defendant, as in *Estill* v. *Deckerd*, *supra*. Still, the question is important as affecting the defence of the statute of limitations, to be presently considered, and in order to determine whether the heirs at law of the original trustees should have been parties, and whether the bill is defective in that regard. But there is not a sufficient statement of facts in the record as it now stands to decide it.

The bill alleges that Partee was appointed trustee by the chancery court on the resignation of the trustees named in the will, and the plaintiff promises to file a duly-certified copy of the record on or

before the hearing. It is not made an exhibit to the bill. There was used by both sides on the argument, and I find in the record, a certified copy of the decree, (which seems not to have been filed,) but nothing else. It can only be regarded as filed in evidence for the hearing, and now used for information. If a part of the bill, it is simply an imperfect document exhibited with it that cannot be said to qualify the broad allegations of the bill, which must, I think, be taken to be true on demurrer, however the facts may appear at the hearing. The learned counsel for the defendant insists that it cannot be looked to at all, and cites *Willis* v. *Louderback*, 5 Lea. 561, which holds that a part of a record cannot be admitted in evidence if the whole is necessary to make out the plaintiff's case. The precise extent or qualifications of this rule, about which there is a good deal of uncertainty in the law of evidence, some cases holding that under certain circumstances the part offered may be read subject to the right of the other side to read other parts or the whole, it is immaterial now to determine. The argument of counsel is that, this paper out of the way, it appears that the original trustees were capable of suing, and does not appear at all that Partee was trustee. But this is a mistake, for the bill alleges, independently of this paper, that he was duly and legally substituted, and on demurrer this must be taken as true. However, I deem it proper to say that the other objection of the defendants' counsel, that the beneficiary was not notified, may become important, if true, on the hearing of this case. Nothing appears by the recitals of the decree except that Partee himself was present, accepted the appointment, and qualified. Whether his wife, the beneficiary, or the other beneficiaries, her children, the remainder-men, (if any there then were,) were notified does not appear; nor the time of the deaths of the original trustees, nor how long they lived after the deed to defendants, if at all, nor who were their heirs at law. This proceeding was under the act of 1831, which was amended by other acts, and all carried into the Code, (T. & S. Ed.) §§ 3648, 3663. See the cases there collected in the notes, and 1 Meigs, Dig. (2d Ed.) 677; *Edmondson* v. *Harris*, 2 Tenn. Ch. 427. Whatever may be the effect of these statutes and decisions in the further development of the facts of this case, for the purposes of the present judgment, the averment of the bill that the trustees resigned, and the husband of plaintiff was duly and legally substituted, will be taken to be true. The objection of defendant that devestiture and vestiture of title were not ordered by this decree is like the others; for, not looking to this paper, it does not so appear, and on the contrary is implied from the broad allega-

tion of the bill. It will be found, however, that this was not necessary under the act of 1831, as the title vested in the new trustee by operation of law. 2 Washb. Real Prop. p. 512, § 19; T. & S. Code, § 3662; *Wooldridge* v. *Planters' Bank*, 1 Sneed, 296.

The next matter for consideration is the character of Partee's estate, both as trustee and husband, in order to determine the effect of the power of attorney to Citizen S. Wood, and the deed made to the defendant under it. It is insisted that the defendant here took under the will only a usufruct, in the discretion of the trustees, and no estate properly speaking; that the whole title, legal and equitable, was in the trustees, and that the defendant received title by the trustees' deed through his attorney in fact, by which means he could convey it. 2 Washb. Real Prop. (4th Ed.) 489, 520. It is to be observed that if defendant's contention, that Partee's substitution as trustee is void, be true, the defendant got no title from him as trustee, but only such as he had as husband; and if his wife had only such usufruct as the trustees named in the will should in their discretion determine was for her benefit, the defendant got by Partee's deed no estate whatever. He may have title under the statute of limitations by holding adversely under color of title to Norman T. and Calvin W. Cherry, the original trustees, but none under the deed. As before remarked, this record does not contain any facts to raise that question, the bill being filed solely on the theory that the substitution of Partee as trustee was valid, and it can only be presented by a plea or answer fully stating all the facts, both as to the defective chancery proceedings and the relation of the original trustees to the adverse holding. On the other hand, if the plaintiff's contention, that she took an equitable life estate in the lands, with remainders in fee to her children or her sisters, as the contingencies mentioned in the bill should arise, but with a purely personal and discretionary power in her brothers—the trustees—to sell the estate for reinvestment, be true, then Partee's deed, whether good as a trustees' deed or not, aside from the act of 1850, to be hereafter mentioned, conveyed his own marital interest in his wife's equitable life estate to the defendant, whether that of the wife was transmitted by the joint power of attorney or not. It is too plain for any argument or citation of authority, whatever may be said about the defeasible character of the estates devised through the discretionary trusts, that the plaintiff did take an equitable life estate under the will, with remainders over to her children or sisters, as the case may be. This appears from the language of the will as relates to her, and from the whole frame-work as

relates to other devisees, and especially her sisters, as to whom the expression is sometimes used, "during her natural life," in making precisely similar provision, for them. As to none are there any words creating a *separate* estate, and therefore nothing to cut off Partee's marital rights. It is equally plain that the trust to preserve the remainders and the discretionary powers prevent any operation of the statute of uses to vest the plaintiff with the legal title at any time, whether the discretion to sell for reinvestment ended with the lives or trust relation of the original trustees or not. It is not at all like the case of *Turley* v. *Massengill*, 7 Lea. 353. The trust to preserve the remainders continues till the falling in of the life estate.

The confusing employment of the words "for her use" and "for her benefit," etc., does not alter the legal effect of this devise. *O'Neal* v. *Teague*, 8 Ala. 345; *Allen* v. *Russell*, 19 Tex. 87; *Nimmo* v. *Davis*, 7 Tex. 26, 32.

And the same effect is to be given to a devise of equitable as legal estates. *Croxall* v. *Shererd*, 5 Wall. 268; Perry, Trusts, § 357. Here the absolute grant of the equitable estate contained in the ninth item in the will is cut down to a life estate by the use of the words "and after her, said Mosella's, death the whole legacy to be divided among her children if any," etc. *Smith* v. *Bell*, 6 Pet. 68; *Poor* v. *Considine*, 6 Wall. 458; *Cropley* v. *Cooper*, 19 Wall. 175; *Belote* v. *White*, 2 Head, 703; *Smith* v. *Thompson*, 2 Swan, 386.

I think it also clear that the powers conferred upon the original trustees to sell for reinvestment are purely personal, and did not pass to the substituted trustee. *Belote* v. *White, supra,* is conclusive on this point, and is in accord with all the authorities. 2 Perry, Trusts, §§ 496, 497, 507; 1 Perry, Trusts, § 249; 2 Washb. Real Prop. p. 513, § 22.

The case, then, is that of a husband, as substituted trustee, without any powers under the will to sell, undertaking, by an instrument referring on its face to the source of his powers, to convey the whole estate, (his wife, who had an equitable life estate, joining in that instrument, which was a power of attorney,) and the execution of a deed in common form by the attorney in fact. What was the effect of the transactions? It is too late at this day to deny that a married woman's power of attorney to convey lands is void. *Aiken* v. *Suttle*, 4 Lea. 103; *Gillespie* v. *Worford*, 2 Cold. 632; *King* v. *Nutall*, 7 Baxter, 221; T. & S. Code, § 2076. She can only convey by deed, executed according to the statute, and we are bound by the state decisions on this question. But the learned counsel for defendant

says we are as much bound by the statute, which is true. Going back to the original North Carolina statute and decisions, and carefully comparing them with our own statute, as it existed at the time of this transaction, he suggests that the supreme court has overlooked the seventh section of the act of 1833, (chapter 92, C. & N. 594.) By the third section it was enacted that "all deeds *or other instruments* of writing executed by husband and wife, etc., shall be good and effectual," etc.; and by the seventh section that "all deeds, *or other conveyances or agreements* that are or may be required, etc., and, in case of conveyances by *femes covert*, the certificate shall be," etc. It does not appear *as a fact* that the court overlooked this latter section, and I cannot undertake to say, inferentially, that it did. Besides, it is not substantially different from the third section, which the court especially notices. The argument is only another mode of saying that these decisions are erroneous, and we are asked to follow the statute itself. But it is the *construction* of the statute by the courts of the state that binds us, and we cannot depart from it. *Fairfield* v. *Gallatin Co.* 100 U. S. 47, 52.

The plaintiff's equitable life estate did not, then, pass by the power of attorney and deed to the defendant. At common law, and in the law courts, a trustee holding the legal title conveys it by his deed to his grantee, but in a court of equity the grantee holds it as the trustee did, when he has notice of the trust, for the *cestui que trust*, and this by implication of law. 2 Washb. Real Prop. (4th Ed.) p. 519, § 5; p. 514, §§ 23, 24; p. 515, § 25; Perry, Trusts, § 321. It is said in *Belote* v. *White, supra,* the conveyance by the trustee was void, and the purchaser acquired no title; but this may be doubtful if a trustee can, by his deed, transmit the title as if he were the owner, (subject, of course, to the trusts,) and the purchaser takes with notice. Be this as it may, if the deed was void the legal title in this case has descended to Partee's heirs at law, who are defendants to this bill, and they hold it, subject to the trust, for plaintiff. The legal title is, then, either in the defendant in possession or the heirs at law, and it is quite immaterial which, for the purposes of this case.

In regard to Partee's interest as husband, it may be well to inquire what passed to the defendant under the power of attorney and the attorney's deed. What was that interest? The marriage being prior to 1850, (T. & S. Code, § 2481,) which prohibits a husband from selling his own interest in his wife's lands without her joining in the conveyance in the manner prescribed by statute for the conveyance of a married woman's land, it may be a question whether that statute has

any application. *Cantrell* v. *Davidson Co. supra;* 3 Tenn. Ch. 427; *Moore* v. *Walker,* 3 Lea. 656. Partee could by his own deed convey his own interest, which vested at the marriage, if that interest could not be divested by subsequent legislation. Cooley, Const. Lim. 360; *In re McKenna,* 9 FED. REP. 27, 30. He was not tenant by the curtesy, as the husband was in the case last cited, but he was in possession, not only as trustee under the will, but also *jure uxoris,* entitled in the latter right to occupy the land and receive the rents and profits during their joint lives; and under- the ruling in *Aiken* v. *Suttle, supra,* even a divorce would not have terminated his estate in the hands of a purchaser. *Coleman* v. *Satterfield,* 2 Head, 262. Being thus possessed of the legal title in his capacity as trustee of the whole estate, and entitled to the beneficial interest just described, his conveyance, if the act of 1850 does not apply, irrespective of his wife's attempt to join in it, passed at least his own estate, which entitled the purchaser to possession during his life, and I think it passed the legal title to the whole estate, subject to the trusts of the will. But if that statute does apply, the interest of the husband is the same as before, except that he had no power to convey it and nothing passed by his deed. *In re McKenna, supra.* Yet this only concerns the extent of the account of rents or profits the plaintiff may be entitled to have, and not the question raised by this demurrer.

We come now to the defence of the statute of limitations. Tenn. Code, §§ 2763, 2765. It is the settled construction of this statute that it bars equitable as well as legal remedies, and that whenever a trustee is barred of his legal remedy or his equitable remedy his *cestui que trust* is also barred, notwithstanding any disability in the *cestui que trust* to sue. Id. and notes; 1 Meigs, Dig. (2d Ed.) p. 537, § 519; *Belote* v. *White, supra; Wooldridge* v. *Planters' Bank, supra; Goss* v. *Singleton,* 2 Head, 68; *Aiken* v. *Smith,* 1 Sneed, 302; *Watkins* v. *Specht,* 7 Cold.· 592; *Meeks* v. *Olpherts,* 100 U. S. 564; *Croxall* v. *Shererd,* 5 Wall. 268. It is not necessary to determine whether the holding of the defendant in this case was adverse to the plaintiff in the sense of our Tennessee statute of limitations, under the rule of *Croxall* v. *Shererd, supra,* as to adverse possession, or whether the dissenting expression of Mr. Justice Miller is the established rule in Tennessee. But it is difficult to perceive how it can have been adverse if the defendant was entitled to possession—*to her possession*—through her husband's deed until his death. If he had never been trustee, and the original trustees had brought ejectment, they would have failed. All they could have done in her behalf or that of the re-

mainder-men, and all she or they could have done in a court of equity, would have been to file a bill *quia timet* to have her rights under. the will, as affected by Partee's sale, declared, thus by decree limiting the purchaser's title to the exact dimensions of the husband's interest *jure uxoris*, and enjoining him from setting up any greater claim. That a court of equity would entertain such a bill by or in behalf of a married woman not entitled to possession until her husband's death has been comparatively only recently established, and long since this transaction. *Cantrell* v. *Davidson Co.* 3 Tenn. Ch. 426; *Dodd* v. *Benthal*, 4 Heisk. 601, 608; *McCallum* v. *Pettigrew*, 10 Heisk. 394; *Murdock* v. *Johnson*, 7 Cold. 605. But those cases say she has her election "to abide her discoveiture and disaffirm the deed within a reasonable time, or come into a court of equity and disaffirm it pending the coverture, and have her rights vindicated and declared." *Dodd* v. *Benthal, supra.* Why she should be barred for not adopting this course during coverture is not clear, when it is remembered that in this case the power of attorney gave notice, on its face, of the will duly probated and of record, and the purchaser knew her rights, as a matter of law, without any declaration of them by a court. In other words, it would seem that the true theory in such a case is that there is no adverse holding, but one subordinate to the wife's title. The cases, however, seem to proceed on the doctrine that the holding is adverse, and that the wife is only protected from the operation of the statute by her coverture, and not then if she and her husband are in a condition to sue jointly, or she has a trustee capable of suing for her. But where her husband has joined in the deed, as in this case, he estops himself from suing, and it is settled she may sue, certainly within three years from the death of her husband, and under some circumstances, perhaps, within seven years.    Tenn. Code, 2757; *Guion* v. *Anderson*, 8 Humph. 298, 325; *Weisinger* v. *Murphy*, 2 Head, 674; *McClung* v. *Sneed*, 3 Head, 218; *Miller* v. *Estill*, Meigs, 484; *McCorry* v. *King's Heirs*, 3 Humph. 267; *King* v. *Nutall*, 7 Bax. 221; *Parker* v. *Hall*, 2 Head, 639; *Cantrell* v. *Davidson Co. supra.* The argument that this principle of estoppel on the husband does not apply unless, as in these cases, he is tenant by the curtesy, is not sound. If he had any interest to convey he is divested of it, and she cannot recover that interest in any suit with him or without him, and he would perhaps be *estopped* by the covenants in his deed where he conveyed no interest at all. It is, however, decided by some of the cases that since the Code forbids him to sell his interest without her deed, if he does so she may recover the land in

equity by making him a defendant, and if she does not do this within
seven years from the deed she is not barred.  *Moore* v. *Walker, supra;*
*McCallum* v. *Pettigrew, supra.*   I understand these cases to decide that
since section 2481 of the Code a wife, notwithstanding the joint action
of herself and husband may be barred, may sue within three years
after discoverture to secure the land.   I am at some loss to deter-
mine whether or not the legal effect of these cases is to establish the
doctrine that this section of the Code applies to prohibit the husband
from selling where the marriage was prior to the act, (January 10,
1850;) but the case of *Moore* v. *Walker* seems that way, while *Cantrell*
v. *Davidson Co.* seems to intimate that it does not.   But they do es-
tablish that if this act deprived Partee of his previously-vested pow-
ers of alienation, as is argued by defendant, and thereby prevented
the operation of his deed to pass his interest, *her* right to bring this
suit is not barred, and that is sufficient to decide this demurrer; for,
if it does not so apply, his interest passed, and the estoppel on him
to sue (or rather on her to sue jointly with him) operated under the
former decisions to prevent the bar, and this irrespective of the
statute.

I am inclined to the opinion that the result of the decisions on this
subject may be thus stated: whether the marriage took place before
or after the act of 1850, (Code, § 2481,) whether the disseizin took
place before or after that act, and whether any interest passed by the
husband's deed to the purchaser or not, the act operates to save any
bar of the statute of limitations as against the wife's equitable rem-
edy until three years after discoverture, except where the bar had
given the disseizor a title perfected by lapse of time before its pas-
sage, or where there was an outstanding trustee capable of suing.
The effect of the act on the husband's interest or estate, as between
him and his wife, or the purchaser from him and her, in cases where
the marriage took place before the act, does not alter the above rule
as to the statute of limitations, but only serves to limit the relief to
which the wife is entitled when she brings the suit.   In this case
that consideration is of no importance.   It might be a very impor-
tant one where the wife's suit is brought during the coverture, or by
her heirs after her death, in view of the question reserved in *McCal-
lum* v. *Pettigrew, supra,* but not here, where the husband never could
have been tenant by the curtesy, and is already dead.   Why this
section of the Code should have the effect to change the previous con-
struction of our statute of limitations without affecting the husband's
estate, so as to deprive him of his vested right of alienation alto-

gether, may be difficult to determine; but it is construed to do the former, and the latter has not been definitely determined. These decisions relieve us from the necessity of determining whether, in a case like this, the possession of the defendant is really adverse to the title of the wife until the death of the husband.

If Partee was never trustee the case might possibly be different, if there were an outstanding trustee capable of suing, (as to which this record does not speak with certainty;) but it is the result of my judgment on the case, as now presented, that the demurrer must be overruled.

In reply to what has been said about the hardship of this case, it may be remarked that it is one's own folly if he does not see that his title is good before he buys subject to a will so plain as this; and in the language of Mr. Justice McFarland "the fraud in this case consists simply in repudiating deeds which are void, and doing so within the time allowed by law. While it does appear in many cases to have the element of bad faith, it is not regarded as such a fraud in law as to repel a married woman from the court." *Parker* v. *Parker*, 4 Lea. 392.

Demurrer overruled.

NOTE.—Amendments. Section 954 of the Revised Statutes embraces every step in the cause down to the final judgment. *Roach* v. *Hulings*, 16 Pet. 319. It confers the power and makes it the duty of courts to cure defects in the record. *Woolridge* v. *McKenna*, 8 FED. REP. 663. It is remedial, and should be liberally construed. *Parks* v. *Turner*, 12 How. 39; *Tobey* v. *Claflin*, 3 Sumn. 379; *Gregg* v. *Gier*, 4 McLean, 208. The court may allow an amendment adding a prayer for relief. Conveyance by married woman. See *Perry* v. *Mechanics' Mut. Ins. Co.*, *ante*, 480, and cases cited.—[ED.