(Medina Couny Common Pleas.)

THE OHIO FARMERS INSURANCE COMPANY v. ELBRIDGE G. HARD, Treasurer of Medina County, Ohio.

(1). Where the county auditor, proceeding under secs. 2181-2, R. S., having reason to believe that a party's returns for the taxation of his personal property are false, notifies such party to give him an opportunity to be heard, such party is not obliged to appear before the auditor but if he fails to appear, the auditor may proceed in his absence to ascertain from the best evidence available the true amount of personal property which such party should have listed for taxation, and have the same entered upon the tax duplicate for collection.

(2). An Ohio Mutual Insurance Co. is not under sec. 2744 R. S. authorized to list for taxation only property, etc., within the state, but all its assets, whether in the form of notes for premiums or cash balances in the hands of its agents in other states, are subject to taxation in Ohio.

(3). The fact that the sworn annual reports of the Insurance Co. to the State Commissioner of Insurance give its assets at a much higher valuation than at which they were returned for taxation, is proof that the company was aware of the true value of its assets, and its tax returns were therefore false within the meaning of the statute.

(4). The Insurance Co. as an explanation of and to justify its returns for taxation of its assets at much less than their true value, claimed that it was the rule in the county and generally in the state to tax personal property at about 60 per cent. of its true value. Held: While the constitution and laws of the state require all property to be taxed at its true value in money, the court will take notice that it is the prevailing rule to assess personal property at about 60 per cent. of its true value. In view of this fact, and as the tax return of the Insurance Co. if it were permissible under the law to return its assets at 60 per cent. of its value, instead of their full value, would be a very fair one, the court remits the penalty, and states the amounts at which the assets of the company should be taxed without penalty.

---

KOHLER, J. A.

The original petition in this case was filed April 5, 1892, and an amended petition was filed December 10, 1892. The case was submitted to the court upon the amended petition, the answer of the defendant, supplementary answer and cross-petition, (filed January 16, 1899) the reply, and the testimony.

As the pleadings are somewhat voluminous a general statement of the nature of the action and of the questions presented will be sufficient.

The plaintiff, the Ohio Farmers Insurance Company, is a corporation organized under an act of the general assembly of this state, passed February 8, 1848, located in Westfield township, in Medina county. It is engaged in the business of fire insurance, and was organized for that purpose; and since that time this company has been engaged in such business quite extensively, not only in the state of Ohio, but a number of other states as well. The general office of the company is in Westfield township, Medina county.

The amended petition sets forth that the real estate of the company and all the monies, credits and movable property added thereto were fully listed for taxation a

required by section 2744, of the Revised Statutes, and the return thereof made to the auditor of the county for the years 1886, 1887, 1889, 1890 and 1891; that in the year 1886 the property was valued for taxation at $880,864.00, for the year 1887 at $930,861.00, for the year 1888 at $932,186.67, for the year 1889 at $1,010,171.08, for the year 1890 at $1,066,444.92, and for the year 1891 at $1,118,198.30; that the valuation so fixed for said years was the fair and full valuation of said property, and that the taxes for each of said years were duly assessed thereon for state, county, town ship and school purposes, which the plaintiff has fully paid for each and all of said years. Complaint is made that notwithstanding the premises the auditor of the county of Medina, on or about the 9th day of April, 1892, certified to the defendant, as treasurer of said county, that he had entered upon the tax list in his office against the plaintiff, personal property, monies, credits and investments for taxation in the years aforesaid, in amounts additional to what had been returned by said company, with the penalty and taxes thereon, as follows:

For the year 1886 .............$938,972.00
     ''        1887 ...........$1,005,111.00
     ''        1888 ...........$1,136,866.00
     ''        1889 ...........$1,151,779 00
     ''        1890 ...........$1,235,468.00
     ''        1891 .............$524,318.00

That the taxes on the same were added as follows:

For the year 1886 ................$9,57.51
     ''      · 1887 ..............$10,252.13
     ''        1888 ..............$10,913.91
     ''        1889 ..............$10,287.43
     ''        1890 ..............$12,848.86
     ''        1891 ...............$5,610.20
                                  ─────────
          making a total of ........$60,490.04
                                  added taxes.

It is alleged that the action of the auditor in so certifying said amounts for taxation was unauthorized; there was no foundation therefor in fact; it was not in pursuance of the requirements of any statute in ascertaining and certifying to the defendant the additional amount of taxes so charged, and that the auditor acted wholly without jurisdiction in the premises.

It is claimed by the plaintiff that its property, and all of it, was fairly and fully listed for taxation according to its average value, and the same as other property was listed for taxation during said years by the owners of property in Medina county.

The company sets forth that the returns so made by it were not false; that there was no evasion by it at any time in the matter of making a due return of all its property for taxation at its fair value, and that it has in all respects complied with the requirements of the statute in respect to the amount and the value thereof.

The complaint is that the treasurer is about to collect the said taxes so assessed against the company by the auditor as well

as the statutory penalty of fifty per centum thereon, all of which, it is averred, is illegal and contrary to justice and equity, being an unjust discriminaion against the plaintiff and subjecting it to taxation greatly beyond the amounts required to be paid by other persons, and the prayer of the petition is for an injunction to restrain the collection of said sum of $60,490.04, or any part thereof.

The answer filed by the defendant, as treasurer, avers that on or about the first of April, 1892, A. L. Corman, being then the auditor of Medina county, having reason to believe and did believe that the defendant had made false returns of its taxable personal property to the auditor of said county for each of the years hereinbefore specified, served a notice upon the plaintiff to that effect, and that thereupon one of plaintiff's directors and the general manager appeared before the auditor on the 7th of April, 1892, and asked to have the hearing of the matters continued to the 9th of April, 1892, which was granted upon said application; and that upon the 9th of April, 1892, plaintiff was given an opportunity to show that its returns of taxable property to the auditor of said county for each of said years were correct, but the plaintiff did not appear, and failed to show that its returns for any one of said years were correct; and that hereupon the auditor, as was his legal duty under section 2781 and 2782, Revised Statutes of Ohio, proceeded to and did correct said returns upon satisfactory and competent evidence, and from said evidence found that the returns made by said company of its property for each one of said years were false, and that he thereupon found the true amount for each one of said years that the plaintiff should have returned as and for its true return of taxable personal property, and that to that sum he added the statutory penalty of 50 per centum, and deducted therefrom the sum each year actually returned, and assessed taxes upon the difference and placed the same upon the tax list in his office and upon the proper duplicate, and certified the same to the treasurer of the county for collection as other taxes.

The answer denies that the plaintiff's returns as made by its officers for any one of the years enumerated were correct, but avers that they were false, and were so made for the purpose of evading the payment of its fair and just share of taxes.

It is claimed by the defendant that the amount returned by the officers of the plaintiff company did not exceed from 50 to 66 per centum of its credits, monies and investments in stocks and bonds.

It is claimed by the defendant that in 1886, the plaintiff had and owned $1,213,234.32 taxable personal property, to which the auditor added fifty per cent, making the sum of $1,819,336.00, and deducting therefrom the returns made by the plaintiff, towit, $680,864.00, which left a balance for that year of $98,972.00, and in like manner

said auditor made his finding for each one of said years.

The term of office of Elbridge G. Hard expired since this suit was commenced, and James Newton succeeded him in office, and has filed his supplemental answer setting up this fact, which the reply admits.

A large amount of documentary evidence was submitted to the court upon the hearing in connection with the oral testimony of a number of witnesses touching the depreciation of real estate and the general value of real estate mortgages during the years covered by this inquiry, and also as to the manner of valuation of personal property for taxation in Medina county and some adjoining counties during the same time. The question was also very fully argued by counsel, both orally and upon briefs submitted to the court.

And the question, therefore, presented is, shall the sum which the auditor of the county has so certified to the treasurer for taxation, stand and be collected, or shall the court modify or entirely annul the action of the auditor in the premises? And this raises a number of questions both of law and of fact which have been very fully and very ably presented to the court by the learned counsel in the case.

Perhaps the first question to be determined by the court, upon the evidence in the case, relates to the finding of the auditor in the matter of the correction of these tax returns for the years mentioned, and this is primarily a question of fact. Did the company omit assets or property that should have been included, or did it undervalue the property that was listed?

And another question arises in the case, which is quite important, which relates to the method of computing the amounts to be added by way of penalty, the penalty being fifty per centum.

It is claimed by the plaintiff company that the penalty of fifty per centum should be based entirely upon the amount omitted by the return, whereas the auditor took the amount of the return as he found it should have been made, and upon that sum added the penalty of fifty per centum, and deducted from this gross amount the amount returned, so that it is claimed by this method the plaintiff would be required to pay a penalty not only upon the amount which it failed to return, but also upon the amount which it did return, which it is claimed would be oppressive and inequitable. This presents a legal question.

Again, it is claimed before any penalty can be annexed by the auditor it must be ascertained and found by him upon evidence that the return made by the company was false; not merely that it was an erroneous account either in the amount of property or in the valuation thereof, but that it was false and made for the purpose of escaping taxation.

It is claimed in this connection that allowing the auditor's correction to stand as to the amount and value of property as shown by the corrected lists, the amount of tax added, including penalty of fifty per centum on omitted property, would be $36,357.90. instead of $60,490.04, which includes a penalty of fifty per centum on property that had been listed for taxation and was not omitted. So this raises a question of law as to the true intent and meaning of section 2781, under which these corrections and additions were made.

Another question presented relates also to the auditor's finding in regard to the assets of the company—property, it is claimed, such as goods, credits and balances in the hands of agents in other states, and upon business done in other states. It is claimed that the auditor had no right in making his findings or in his corrections to include assets, notes credits, monies etc., of that description, the claim being that during the same years the company was doing business and had agencies throughout Indiana, Michigan and Illinois and other states, and that in the prosecution of the business, notes of farmers were sometimes taken for premiums upon insurance policies, these notes running variously from sixty days to six months; these notes were collected at these agencies and the money remitted to the company; and that, perhaps, the correct amount of business of that description, within and without the state, was from $202,000.00 in 1886 to $234,000.00 in 1891.

In fine, it is claimed that the auditor's statement includes not only its assets in the way of credits at its agencies in Ohio, but also in all of the other states in which it was doing business at that time, and this it is asserted and argued he had no right to do.

Dependence is placed upon section 2744 of the Revised Statutes, and it is claimed that the plaintiff is one of those corporations whose return for taxation is governed by that section, which requires the listing of all their personal property, monies and credits within the state. and that under this language the plaintiff was only required to list its monies and credits at such agencies as are within the state.

Another question presented and argued by counsel relates to the proper valuation for taxation of the property that admittedly should have been listed here for taxation. It is claimed that the auditor listed this property at its face value, whereas it should have been listed at its true value in money. A large amount of the assets of the company is evidenced by notes and mortgages upon farm lands and property, indeed its assets are chiefly of that description, and it is claimed that although these loans were secured by mortgages, that in valuing them and listing them for taxation the officers of the company were warranted in taking into account the depreciation in the value of farming lands during the current years as affecting the market value of the securities so held by the company; and it is claimed on the average amount of such mortgages the depreciation in the value of

farm lands so pledged for the payment of loans caused a shrinkage of fully 25 per centum in the value of such mortgage securities. It is claimed also that the auditor's statement in rega d to the bills receivable, covering balances in the hands of agents, is excessive, and it is claimed that such balances are liable to shrinkage, from various causes, of fully 30 per centum of their face value, and that a deduction should be made from the auditor's statement for the amount of such shrinkage.

Another question arises in the case upon the testimony offered and upon the arguments of counsel touching the rule or custom of listing property. It is claimed on the one hand that in Medina county, and other counties, it has become a fixed rule and practice in the listing of personal property to value it at from 60 to 66 per centum óf its true value in money. It is claimed that that is the rule as to real estate; and bank stocks are not listed at more than 66 2 3 per cent; and that the owners of notes and mortgages and other credits, in accordance with a general practice or custom, list intangible property of that decription at from 60 to 66 per centum of its true value in money, and even less.

On the other hand such custom is denied, and it is claimed that the statute fixes the rule, that there is no legal warrrant or excuse whatever for listing property at less than its true value in money; that the fact that one person has so listed, or that certain banks, or all banks, are so listing their property, is no excuse whatever. The law furnishes the rule, and any custom in that respect, or any rule established by any board of revision or equalization fixing a rule contrary to the rule of the statute, is void and constitutes no excuse for listing property at less than its true value in money.

The point is also made that unless the auditor found that the returns for the five years from 1886 to 1891 were false, as the language of that section has been construed by the courts, then he had no juris diction whatever to proceed in the premises, and no right or power to make corrections, or place upon the duplicate property omitted or undervalued, unless it is found that the returns were in fact false.

There are a number of other questions, perhaps, incidentally that have been argued in the case, but the above presents the principal questions.

These questions I will endeavor to consider and determine about in the order in which I have stated them.

The jurisdiction of the court of common pleas to review the action and proceeding of the auditor is conferred by section 5848 of the Revised Statute. "The court may enjoin the whole tax, or part of it, or remit the penalty, as the facts and the justice of the case require. The suit affords every remedy a citizen can require, consistently with the interests of the state, which cannot be delayed in the collection of its revenue without more or less embarrassment

o all the public interests." (Musser v. Adair, 55 Ohio St., 466.)

It appears that the auditor, before taking any steps in the premises, notified the officers of the Ohio Farmers Insurance Company of his belief that the property of the company had not been fully and fairly returned for taxation, and set a time for the hearing of the case before him and such explanations as the officers of the company might see fit to make at that time. It appears also that one of the directors or officers of the company, pursuant to such notice, appeared before the auditor and requested a postponement until a subsequent day for such hearing, which was granted, but upon the adjourned day and at the time and place fixed the company failed to appear, and no officer or agent appearing in its behalf, the auditor thereupon proceeded to examine the evidence which had been submitted to him, touching the alleged failure of the company to make due and full returns of its property and assests for the five years preceding, and also for the current year. Doubtless the company was not obliged to appear before the auditor and make defense; it could let the case go by default if it saw fit so to do, and no good reason has been presented to the court to account for the failure of the company to appear before the auditor at the time mutually agreed upon and submit the evidence and make the explanation which has been submitted to the court in this case. It was a question of taxation with which the auditor of the county, from the very nature of his duties, was quite familiar, and as he was acting under an oath of office, as well as under the sanction of official duty, an honest purpose in the discharge of his official duties is to be presumed.

The proceeding before the auditor was had under section 2781, as amended April 14, 1886, and which was in force at the time when the auditor made his correction, and 2782, which sections read as follows:

"Section 2781. If any person whose duty it is to list property or mke (a) return thereof for taxation, either to the assessor or county auditor, shall, in any year or years make a false return or statement, or shall evade making a return or statement, the county auditor shall, for each year, ascertain, as near as practicable, the true amount of personal property, monies, credits, and investments that such person ought to have returned or listed, for not exceeding (the) five years next prior to the year in which the inquiries and corrections provided for in this and the next section are made; and to the amount so ascertained, for each year, he shall add fifty per centum, multiply the sum or sums thus increased by said penalty by the rate of taxation belonging to said year or years, and accordingly enter the same on the tax lists in his office, giving a certificate therefor to the county treasurer, who shall collect the same as other taxes."

"Section 2782. The county auditor if he

shall have reason to believe, or be informed that any person has given to the assessor a false statement of the personal property, monies, or credits, investments in bonds, stocks, joint-stock companies, or otherwise or that the assessor has not returned the full amount required to be listed in his ward or township, or has omitted or made an erroneous return of any property, moneys, or credits, investments in bonds, stocks, joint-stock companies, or otherwise, which are by law subject to taxation, shall proceed, at any time before the final settlement with the county treasurer to correct the return of the assessor, and to charge such persons on the duplicate with the proper amount of taxes; to enable him to do which, he is hereby authorized and empowered to issue compulsory process, and require the attendance of any person or persons whom he may suppose to have a knowledge of the articles, or value of the personal property, moneys, or credits, investments in bonds. stocks, joint-stock companies, or otherwise, and examine such person or persons, on oath, in relation to such statement or return; and it shall be the duty of the auditor, in all such cases, to notify every such person, before making the entry on the tax-list and duplicate, that he may have an opportunity of showing that his statement or return of the assessor was correct; and the county auditor shall, in all such cases, file in his office a statement of the facts or evidence upon which he made such correction; but he shall, in no case, reduce the amount returned by the assessor, without the written assent of the auditor of state, given on a statement of facts submitted by the county auditor. In all cases in which any person shall make a false statement of the amount of property for taxation, to evade the payment of taxes, in whole or in part, the person making such false statement shall be liable for, and pay all costs an expenses that may be incurred under the provisions of this section, and the same fees and costs shall be allowed and paid as are now or may be allowed by law, for similar services, and if not paid, may be collected before any justice of the peace of the proper county, by suit in the name of the county commissioners, but in all cases under this section, where the statement shall be found correct, and no intention to evade the payment of taxes, the costs and expenses incurred under this section shall be paid out of the county treasury of the proper county, on the order of the county auditor."

"The auditor of a county, under sections 2781 and 2782 Revised Statutes, does not act as a judge. He is required to inquire and take evidence to inform his mind and must use his best judgment in the matter, but in all this he does not act judicially within the meaning of the constitution; he acts simply as an agent of the state in the valuation and assessment of property of its citizens for the purpose of taxation; he is simply a ministerial officer and none other. His proceedings under these sections make a prima facie case for the collection of the tax based on the additions." (By Judge Minshall, in Musser v. Adair, 55 Ohio St., 466·)

The auditor of Medina county, therefore, did at the time stated, and after due notice to the company, proceed to inquire as to the returns made for taxation by the Ohio Farmers Insurance Company for the years mentioned. He had before him the annual reports made by the company to the superintendent of insurance, pursuant to section 3654 Revised Statute, which, so far as it is necessary in this case to refer to, reads as follows:

"The president or vice-president and secretary of such (each) insurance company organized under any law of this or any other state, and doing business in this state, shall, annually, on the first day of January, or within thirty days thereafter, prepare, under oath, and deposit in the office of the superintendent of insurance a statement of the condition of such company on the 31st day of December then next preceding, exhibiting the following facts and items and in the following form, namely:"

And the report filed by the company with the superintendent of insurance shows assets as follows:

For the year 1886—

| | |
|---|---:|
| Real estate, | $ 18,000.00 |
| Loans on mortgages, | 738,346.38 |
| Interest due on mortgages, | 1,510 00 |
| Interest accrued on mortgages, | 40,566.93 |
| U. S. regular 4 per cent. bonds, | 31,750.00 |
| Municipal bonds, | 92,697.68 |
| Loans on collaterals, | 19,500 00 |
| Cash on hand and in banks, | 183,622.10 |
| Interest due on stocks, | 2266.08 |
| Bills receivable taken for fire risks, not matured, | 219,138 86 |
| Rents due, etc., | 4,081.00 |
| | $1,351,479.89 |
| Deduct real estate, $18,000 00 | |
| Deduct U. S. bonds, 31,750.00 | 49,750.00 |
| Balance taxable assets | $1,301,729.89 |

For the year 1887—

| | |
|---|---:|
| Real estate, | $ 20,328.95 |
| Loans on mortgages, | 781,161.62 |
| Interest due on mortgages, | 4,090.28 |
| Municipal bonds, | 84,409.97 |
| Collateral securities, | 38,000.00 |
| Cash deposited in banks, | 201,653.51 |
| Cash in company's office, | 8,977.28 |
| Interest due on bonds, etc., | 2,960.75 |
| Interest on collateral loans, | 2,047.98 |
| Bills receivable taken for fire risks, not matured, | 251,567.20 |
| | $1,415,197.54 |
| Deduct real estate, | 20,328.95 |
| Balance taxable assets, | $1,394,868.59 |

For the year 1888—

| | |
|---|---|
| Real estate,................... $ | 21,626.71 |
| Loans on mortgages,......... | 906,905.64 |
| Interest on mortgages,....... | 52.826.08 |
| Municipal bonds,............. | 133,003.57 |
| Collateral loans, ........... | 28,500.00 |
| Cash in office and bank,..... | 137.992.39 |
| Interest accrued on bonds,.. | 2,912.31 |
| Interest on collateral notes,. | 1,2 43.47 |
| Bills receivable for fire risks, not matured,............... | 191,317.02 |
| | $1,476,327.14 |
| Deduct real estate,......:... | 21,626.71 |
| Balance taxable assets,.... | $1,454,700.43 |

For the year 1889—

| | |
|---|---|
| Real estate,................... $ | 22,089.37 |
| Mortgage loans,.............. | 894,247.40 |
| Municipal bonds,............. | 113,736.23 |
| Collateral loans,............. | 28.920.00 |
| Cash on hand and in banks,. | 224,486.22 |
| Interest on bonds,........... | 2,562.22 |
| Interest on collateral loans,. | 1,250.71 |
| Bills receivable taken for fire risks, not matured,......... | 220,152.16 |
| | $1,561.008.61 |
| Deduct real estate,......... | 22,089.37 |
| Balance taxable assets,.... | $1,538.919.24 |

For the year 1890—

| | |
|---|---|
| Real estate, ................... $ | 22,089.37 |
| Mortgage loans,.............. | 928,002.16 |
| Interest on mortgages,....... | 54,052.65 |
| Municipal bonds,............. | 104.366.05 |
| Collateral loans,............. | 16,920.00 |
| Cash in office,................ | 15,462.9 |
| Cash in bank,................. | 276,297.11 |
| Interest on bonds,........... | 1,925.95 |
| Interest on collateral loans,. | 829.00 |
| Bills receivable for fire risks, not matured,.............. | 234,275.66 |
| | $1,654,230.64 |
| Deduct real estate,......... | 22,089.37 |
| Balance taxable assets,.... | $1,632,141.27 |

For the year 1891—

| | |
|---|---|
| Real estate, ................... $ | 71,800.00 |
| Mortgage loans,......:...... | 919,490.99 |
| Interest on mortgages,....... | 50.627.52 |
| Municipal bonds,............. | 200 067.24 |
| Collateral loans,............. | 14,120.00 |
| Cash in office and banks,.... | 330,897.73 |
| Interest on bonds,........... | 4,476.48 |
| Interest on collateral loans,.. | 1,062.53 |
| Gross premiums not more than three months due,.. | 180,454.38 |
| All other property,........... | 1,800.00 |
| | $1,774,796.67 |
| Deduct real estate,......... | 71,800.00 |
| Balance taxable securities.. | $1,702,996.67 |

While the property returned for taxation by the company to the auditor was as follows:

| | |
|---|---|
| For the year 1886,..........$ | 880,864.00 |
| " 1887,.......... | 930,861.00 |
| " 1888,.......... | 932,186.67 |
| " 1889,.......... | 1,010,171.08 |
| " 1890,.......... | 1,066,444.92 |
| " 1891,.......... | 1,118,198.30 |

Finding these differences for each of these years, and upon this and other evidence, the auditor proceeded to and did correct the returns by increasing the valuation to what he believed to be the true value in money of the taxable assets of the company. These reports of the company to the superintendent of insurance were made on the 31st of December in each year, while the returns for taxation were made on the Saturday before the second Monday of April in each year. so that in each year he added the estimated increase between the 31st of December and the second Monday in April for each year as follows:

| | |
|---|---|
| For the year 1886,.............. | $20,000.00 |
| " 1887,.............. | 25,000.00 |
| " 1888,.............. | 16,000.00 |
| " 1889,.............. | 24,000.00 |
| " 1890,.............. | 25,000.00 |
| " 1891,.............. | 30,000.00 |

Having thus arrived at the true amount of the money value of the assets of the company as he believed, he added to the amount thus found the 50 per cent. penalty provided for by section 2781, except for the current year of 1891, and from this gross amount he deducted the amount which the company actually returned for taxation in each year, and then multiplied the difference by the rate of taxation. The total amount of unpaid taxes so found was $60,490.04. It was to enjoin perpetually the collection of this tax that this suit was brought.

The first question, therefore, to be determined by this court, under the issues joined by the pleadings, is whether these returns made by the company for the years 1886, 1887, 1888, 1889, 1890 and 1891, or any of them, were false returns within the meaning of section 2781, as construed in Ratterman v. Ingalls, 48 Ohio St., 468. If they were not false returns as the term is construed by the supreme court, but were still incorrect, has the auditor the right, under section 2781 or section 2782, to correct the duplicate, adding simply taxes without penalty back of the current year? If the auditor, from the evidence before him, finds no false return, no evasion in making returns, and no willful undervaluation of personal property, that ends the case. If, however, he finds anyone of the above three grounds he may correct the duplicate under these two sections 2781 and 2782, and issue his certificate, placing the

amount of his finding on the grand duplicate under the last clause of section 2753.

In Ratterman v. Ingalls, 48 Ohio St., 468, the supreme court had these sections of the Revised Statutes under consideration and determined the meaning of the language, to-wit "a false return", as follows: "In order to render a return made by a tax payer to an assessor of property for taxation a false return within the meaning of original and amended sections 2781, Revised Statutes, there must appear, if not a design to mislead or deceive on the part of the taxpayer, at least culpable negligence. Culpable negligence is sufficient though there may be no design to mislead or deceive to make a return false." And Judge Spear, in the above case, uses this language, "It is the duty of the resident property owner to return his taxable property for taxation. In the performance of this duty he must use diligence and care in acquiring knowledge from sources where information is obtainable. If he uses such care and acts honestly, making his return in accordance with his best knowledge and belief after using all reasonable means to obtain an intelligent belief, his return will not be false within the meaning of section 2781, but this belief must result from a careful effort to perform the duty. A blind reliance upon an indolent belief that one's property is not taxable, without investigation, inquiry or disclosure to the taxing officer, would show culpable negligence as fatal to the claim of good faith and innocent performance as would a direct intent to deceive."

Now, what are the facts disclosed by the evidence in this case?

The Ohio Farmers Insurance Company was incorporated in 1848, and has been doing a large and prosperous business ever since that time; that its officers are men of prudence, foresight and sound judgment, is shown by the present standing of the company, and its constantly increasing prosperity during the years it has been in existence. Its business is not confined to the state of Ohio, but it extends its operations into adjoining states, Indiana, Illinois, Michigan, Missouri, and several western states, where it has a large number of agencies, through whom it carries on its insurance business. It is under state supervision and control. It is to be presumed that the officers and directors of this company have at all times an accurate knowledge of its business transactions, so that its financial standing and the condition and value of its assets are accurately known to those having its business in personal charge. Its business must be conducted by a system of accounts as precise and accurate in all respects as the business of

a banking institution or of any large corporation, so that in the matter of making returns to the county auditor for taxation, there would seem to be very little left for mere conjecture or estimate as to the true value in money of the property and assets of such corporation. The officers of the company have complete sources of information readily at hand, and taking, therefore, these two reports made by the same officers for the same years, one to the superitendent of insurance, made pursuant to law; and the other made to the auditor of the county for taxation, also pursuant to law, the difference between the amounts so shown is so great as prima facie to indicate a purpose to evade or escape taxation upon a large amount of property.

It is claimed, however, in explanation of this difference in these two reports, that the report made to the superintendent of insurance showing the condition and property of the company, covers assets in other states, to-wit, money in the hands of agents, and, perhaps, loans in other states, while the company was only required to return for taxation its property and assets within this state. And again it is claimed that the returns made, or reports made to the superintendent of insurance, show the exact par value of all the assets and property of the company, whereas, by universal practice, or general custom and practice, it is claimed that the property is not returned at such valuation, but at the rate of from fifty to sixty-six per centum of its valuation; and that, therefore, taking into consideration simply the property taxable in this state, and excluding from it property held and owned by the company in other states, and returning it or estimating it at the same rate by which other property in Medina county is returned, that the company has fully complied with its duty in this respect, under the law, and that the returns were, therefore, not only not falsely, carelessly, nor negligently made, but were entirely correct.

It is claimed that section 2744 of the Revised Statutes applies; that it is one of those corporations whose return for taxation is governed by that section, which only requires the listing of all their personal property, moneys and credits within the state; and that, therefore, the officers of this company, in making the return to the auditor of taxable assets, were warranted in excluding from the return all assets or property not within the state; that it was only required to list its credits and moneys within the state, and at such of its agencies as are within the state.

Now, upon this point, while there is evidence presented to the court showing that the company was carrying on

business in states other than the state of Ohio, to-wit in the states already mentioned, no evidence whatever was introduced to the court to show what that business was, how much it was, or how much there was in the hands of the agencies in other states, or the character of the assets. Upon this point very much was left, by the testimony, to mere conjecture and estimate without any basis whatever for anything like an accurate calculation.

I think it is not tenable that moneys and credits in the hands of agents in states other than Ohio and owned by the company, are not taxable in Ohio. The company, in the prosecution of its business, issues its policy, through its agents; these agents, wherever they are in the state or out of it collect the premiums, perhaps cash is paid, possibly in some instances notes are taken; the agents collect the notes and in due time, under such rules as the company prescribes, these credits are returned to the company in Ohio, and to its general office in Medina county. My judgment is that such assets, whether in the form of notes for premiums, or cash balances in the hands of agents, are assets taxable in the state of Ohio.

It is true that this company, in order to do business in other states, may be subjected, by the laws of those states, to a franchise tax, or a tax for permission to do business in the state, but that act alone does not constitute double taxation, nor does it, in the judgment of the court, relieve the plaintiff from the obligation to return all such property at its true value in money for taxation in the state of Ohio.

As stated in Cooley on Taxation, page 372, "The general rule that personalty is to be assessed to the owner where he has his domicile has been mentioned. This rule is applicable to assets and other choses in action though the debtor reside out of the state, and although they are secured by mortgage on lands out of the state, and it applies to shares held in foreign corporations". It is doubtless true, especially in modern times, in view of the great increase in amount and variety of personal property not immediately connected with the person of the owner, that for the purposes of taxation it may be separated from its owner and may be taxed on its account at the place where it is, although not the place of his domicile, and even though he is not a citizen or resident of the state which imposes the tax. The general rule, however, is expressed in the maxim mobilia sequuntur personam, by which personal property was regarded as subject to the law of the domicile of the owner. I think this is the rule in the state of Ohio; that is, that intangible personal property, choses in action, moneys and credits,

have no situs apart from the domicile of the owner. A resident of Ohio investing money in the states of Indiana, Illinois, or any other state, holding notes therefor, which are secured by mortgage in other states, cannot shield himself from taxation for such property even though the note is made payable in another state and is there paid. Many of our large industrial corporations extend their business into many if not all of the states of this union, and perhaps even farther. They are obliged to extend credit, they take notes or hold accounts, and this business is often transacted in other states by the hands of agents who collect these choses in action and remit the money to the principal office and place of business in this state. Such personal property is clearly taxable in this state, where the owner or owners have their domicile, and not in the states where the debtor lives, or where the notes may be payable. The case of Grant v. Jones, 39 Ohio St., 506, is in point. In that case a non-resident of the state, in fact having no residence anywhere, who is a peddler traveling from state to state, but for fifteen or twenty years had been doing business in this state, loaning money and taking mortgages upon property in this state, and the auditor of Butler county brought suit against him for more than $2,000.00 for taxes assessed against him in one township of that county for the years 1874, 1875, 1876, 1877 and 1878, but Judge Johnson, announcing the opinion of the court, held they were not taxable there, for the reason that the owner was not a resident of the state, and that these choses in action had no situs apart from the domicile of the owner.

To the same effect is Myers v. Seaberger, 45 Ohio St., 232. "A loan of money secured by mortgage on real estate is a credit within the meaning of the statutes of this state, providing for the taxation of property; and, where the creditor resides in another state, is not subject to taxation in this, although the securities are in the hands of an agent residing here and entrusted, by the terms of his agency, with the collection of the interest and principal when due and its transmission to the creditor when collected."

Hilliard in his work on the Law of Taxation, page 182, says, "Debts and choses in action, being a species of intangible property, are deemed, for purposes of taxation, to be situated at the domicile of the owner. These choses in action are properly assessed in the county where the owner resides; so money loaned by one in a certain city and made payable there, cannot be taxed as personal property, he not being a resident either of the city or of the state."

In the case of John M. Lee v. Dawson, Treas., (the fifth circuit of this state), 8 C. C., 365, the syllabus is as follows: "Owners of intangible property, residents of Ohio, must list the same for taxation, even though the same is under the control and management of a non-resident agent for investment and collection." In this case, decided by Judge Jenner, the court says, "Investigation and correction by the auditor was governed by section 2781 as amended April 24, 1893", and in deciding this case the learned judge also gives the rule as to the valuation of property or funds for taxation, as follows: "The rule, as we understand it" says the court, "and as provided by section 2739, that we must determine what the fair value of the property is that should be listed or taxed.

"That there are some inequitable things connected with the system of listing property in Ohio, is apparent to counsel and to everybody; but here is the statute, and we must recognize the rule of value to be as we have stated it. Take bank stock for example, it may be worth 100 cents on the dollar, yet it is never returned at 100 cents on the dollar, on the contrary the average is from 60 to 70 per cent. This is so, perhaps, without a single exception throughout the state. If it is assessed in one county at 100 cents on the dollar, and in another, or in many counties, at 60 cents, then there is an inequality, and it is inequitable and unfair." In this case the securities were valued by the court at 100 cents on the dollar, not including interest. That the company pays a franchise tax in other states for permission to do business therein does not excuse the company from returning for taxation such property in this state, where the company is located.

On this point it is the opinion of the court that the company had no right to exclude from its tax returns these intangible assets outside of the state of Ohio, but was bound to return them in connection with the assets in the hands of its Ohio agents. Any other rule than this would introduce the greatest confusion in the taxation of intangible property, and would open a wide door for fraud and evasion of taxes. As I have stated, the general rule for determining the situs of personal property is that it follows the person of the owner and has its situs at his residence. "A debt for purposes of taxation is situated at the domicile of the creditor, although secured by mortgage on real estate situated in another state." (Kirtland v. Hotchkiss, 100 U. S., 49).

It is contended, however, that these assets of the company were valued for taxation at their true value in money, the same as other property was valued in Medina county, and upon this point there was considerable evidence to show that lands were generally assessed for taxation at about one-half the selling value thereof. There was some evidence also as to the taxation of shares in national banks, which, according to rule established by the state board of revision, were taxed at about sixty-six per centum of their true value; that other property was taxed much below its true value, not only in Medina county, but in Wayne county, and in Lorain county.

The evidence upon this question was very unsatisfactory. Nothing like a general, uniform or established rule upon the question as to the percentage of valuation was given to the court upon the hearing of this case. The witnesses differed. The auditor of Medina county, in his testimony, stated there was no rule upon that subject other than the instructions to the auditor from the auditor of state, and which was that property should be listed for taxation at its true value in money.

I am satisfied, however, not only from the evidence in this case, but from facts that have become so notorious and so universal that the court might, perhaps, take judicial notice of them, that all kinds of property are greatly undervalued for taxation.

Justice Miller, of the United States supreme court, in Cummins v. Merchants' National Bank, supra, declared that it was a matter of common observation that in the valuation of real estate this rule; that is, the valuation at its true value in money, is habitually disregarded, and the same is still more true in regard to the valuation of personal property.

According to the report of the tax commission, appointed by William McKinley as governor of the state, and filed on December 23, 1893, the personal property of the state is not taxed at over from 15 to 20 per centum of its true value in money, and this notwithstanding the very rigid system in force in this state relating to the taxation of personal assets. I am inclined to believe from all that I can learn that in Summit county, at least, containing the manufacturing city of Akron, that the large industrial corporations do not list or pay taxes upon more than ten to fifteen per centum of the true value in money of their personal assets. Indeed, the conclusion of the tax commission, to which I have referred, is that, "It is confidently believed that no appreciable part of the intangible property existing in the city counties is reached by our method of taxation. It is the country counties which pay the taxes upon personal property." (See report of tax commission, 1893).

In the case of Cummins v. Merchants National Bank, supra, application was

made to the court for an injunction to restrain the collection of taxes on bank shares, and it was claimed that these shares were valued at a larger percentage of value than that assessed upon other species of property. In this case the court found from the evidence that the officers charged with the valuation of property adopted a settled rule, or system, by which real estate was estimated at one-third of its true value, ordinary personal property about the same, and monied capital a six-tenths of its true value. The court found that throughout a large part of the state of Ohio, including Lucas county, the officers charged with the valuation of property for the purposes for taxation adopted a settled rule, or system, in regard to such taxation. But no evidence of any such rule has been disclosed in this case, or of any system or concurrent agreement on the part of the taxing officers. Personal property, other than bank shares and railroad property, is assessed annually by district and ward assessors in the counties and cities, and their assessment is returned to a county or city board of equalization. This assessment includes all personal property, monies, credits and investments of capital, other than those in banks or railroads. Banking and railroad property stands on a different basis, and there is a submission of all of them to a state board of equalization, which finally passes upon the assessment of the counties; and it is doubtless true in respect to bank shares, that the rule established by the state board of revision, composed of the governor, auditor of state and attorney general, is that they are taxed at sixty-six and two-thirds per centum. How such a rule was ever adopted, or upon what authority it stands, I am quite unable to ascertain.

Real estate is not listed for taxation by the owner. He has nothing to do with fixing its value. It is listed by the assessor, and its value fixed by him, and this is subject to revision and equalization by a city or a county board with which the owner has nothing to do. It is otherwise in respect to personal property. There can be no doubt that the fact that real estate lies open to view, that none of it escapes taxation, that it cannot be hidden away, and that personal property, especially intangible personal property, is so difficult to reach and get upon the duplicate, that the assessors and boards of equalization, in consideration of this act, have placed the valuations of real estate at a figure below its true value in money, perhaps, on an average not above sixty or sixty-six per centum of its true value; but the very fact that real estate is so taxed has induced owners of other species of property, up-on the claim of uniform taxation, to put in their property at a reduced valuation, so that at present it frequently happens that the owner of shares in a national bank, on which he receives a dividend semi-annually, and which would regularly bring in the market from $1.10 to $1.50, insists upon taxing his shares at the same rate. And one who has $1,000.00 in money in a bank fully justifies himself in returning his cash at $600.00 in money; and one who has $10,000.00 in notes, drawing seven per centum interest, amply secured by mortgage, feels perfectly warranted in returning his credits at $6,000.00 in value, so that these absurd results follows from a departure from a plain reading of the law requiring property to be taxed at its true value in money.

Article XII, section 2, of the constitution of the state of Ohio, declares that, "Laws shall be passed, taxing by uniform rule, all moneys, credits, investments in bonds, stocks, joint stock companies, or otherwise; and also all real and personal property, according to its true value in money;" and section 3 provides, "The general assembly shall provide, by law, for taxing the notes and bills discounted or purchased, moneys loaned and all other property, effects, or dues, of every description, (without deduction)".

Thus it appears, as far as the constitution is involved, that exact equality of burden is imposed upon all taxable property, whether owned by banks or bankers, or other persons; and further that all property should be taxed according to its true value in money. (Judge McIlvaine, Wagoner v. Loomis, 37 Ohio St., 578). And Judge McIlvaine, in the same decision, speaking of the inequalities of taxation, uses the following language: "The inequality complained of cannot, in any just sense, be attributed to the state of legislation on the subject. Whether it was wise to adopt different modes and agencies for determining the value of taxable property we need not consider. Much might be said in its favor. But we can, and do affirm, with the utmost confidence, that an honest and intelligent discharge of duty by those intrusted with the execution of the respective modes provided by law, would accomplish all that was intended by the constitution. A faithful execution of the different provisions of the statutes would place upon the duplicate for taxation all the taxable property of the state, whether bank stocks or other personal property or real estate, according to its true value in money; and the equality required by the constitution has no other test. There is nothing in the constitution which requires property to be taxed according to the same per cent. of its true value in money, save only

the one hundred per cent. The difficulty, therefore, in this case is not attributable to the laws, but to a failure to execute them in conformity to their true meaning and intent.''

Pursuant to the constitutional mandate, the general assembly of the state, by section 2744, of the Revised Statutes, requires corporations generally to list their property for taxation at its actual value in money. And why stock held by an individual in a national bank, upon which dividends are regularly paid of six per cent., and which has a saleable value anywhere from $1.10 to $1.50, should be taxed for sixty-six per cent. is more than I can understand.

The language of the constitution is clear and plain, as well as the laws of this state, upon that subject, and I am exceedingly reluctant to recognize any rule, or custom, or practice, in regard to percentage of the true value of such property, my judgment being that the public and private interests will be best subserved and greater equality of taxation secured by enforcing the constitutional rule according to its letter and spirit.

In this case, however, it is not necessary that I should decide that point. I merely find that the evidence presented in this case presents no rule or custom or practice on the part of the auditor, or of any board, touching the taxation of personal property in Medina county at less than its true value in money; and while it is doubtless true that the Ohio Farmers Insurance Company listed its property for taxation, perhaps, as fairly as other companies, and, indeed, at a much larger percentage of valuation than industrial corporations generally, I still think that its duty was, under the law, to return its taxable assets at their true value in money.

Now, it is claimed that a large amount of the taxable assets of this company consisted of loans secured by mortgages upon real estate in Ohio and elsewhere, and that for a number of years, beginning somewhere along in the '80's down to the present time, there has been a great depreciation in the value of real property. This is doubtless true. It is one of the results of the business depression through which the country has recently passed, and that this business depression—loss of credit—greatly affected the value of farming property, is well known to all; and it is urged upon the court that this being the case, the mortgages upon such real estate held by the insurance company were likewise affected, and the value of such securities depreciated in the market.

I think there was evidence offered to the court tending to show depreciation in some cases from 25 to 40 or 50 per centum of the value of real estate. The

Ohio Farmers Insurance Company's loans and mortgages were doubtless taken pursuant to law, and under section 3637, which section provides that the company may loan its money upon mortgage security, but the security must be upon unincumbered real estate in this state worth fifty per cent. more than the sum loaned, exclusive of buildings. It must be presumed that in loaning money and taking these mortgages that the company was careful to comply with this law, as well as for its own interests, and this would leave a margin of fifty per cent. for any possible depreciation in value of the real estate, excluding the value of the buildings. The company has these mortgages in its possession and, doubtless, has full knowledge of the nature and adequacy of the security, and, except in two or three instances, no case of a loan or mortgage was presented where the company had lost, or probably would lose, anything by reason of the depreciation in the value of the security.

In fine, the court was asked by counsel to take this whole lot of mortgages covering about eight hundred thousand dollars, and to conclude that by reason of the general depreciation of real estate, that these mortgage securities, as a whole, were affected to the extent of from 25 to 30 per cent. of their par value.

This corporation, doubtless, was not required to list for taxation any note at more than its true value, and if, by reason of the insolvency of the maker or the inadequacy of the security, its value was depreciated, that should have been and should be rightly taken into account. It doubtless, would have taken considerable time to go through this list of mortgages and see exactly what was good and what was not, but in the absence of such evidence the court can only conjecture that by the general depreciaton of real estate, the securities were impaired and impaired to the extent of affecting the loans and the money to be recovered thereon. In the absence of some specific evidence showing what loans were impaired in value and to what extent, I am unable to conclude that the officers of this company were warranted in making any deduction from what these loans called for, and from what the company itself, in its estimates for valuation to the insurance commissioner, represented their value to be, on account of a general shrinkage in the value of real estate.

Coming to the item in the returns in question, cash on hand and in banks, without question that has its situs where the company is located in this case, and is taxable in Medina county; and the difference in the amount of cash so returned for taxation each year,

and the amount reported to the superintendent of insurance will be seen from the following statement:

|  | Cash reported to the superintendent of insurance. | Cash reported to the auditor for taxation, |
|---|---|---|
| For the year 1886..$183,622.10 | | |
| " 1887..$210,630.79 | | $78,468 50 |
| " 1888..$137,992.39 | | $169,591.01 |
| " 1889..$224,486.24 | | $127 256.90 |
| " 1890..$291,759.80 | | $145,408.88 |
| " 1891..$330,897.73 | | $177,331.15 |

Now, it is said in answer to this there may be undervaluations upon some items, and, perhaps, larger valuations upon others, that it is sufficient if the property, taken as a whole and in the aggregate, meets the requirement of a fair valuation of the property in money, but it would seem to the court that upon this item there certainly could be no misapprehension.

Coming, therefore, to the principal question in this case, namely, were these returns for taxation so made by the company in 1886, 1887, 1888, 1889, 1890 and 1891, false as that language is construed by the supreme court? I have already indicated that, in my opinion, the company's returns were, during all these years, incorrect, and for many reasons I hesitate to find that the returns for these years were not only incorrect, but that they were false returns within the meaning given to the word "false" in Ratterman v. Ingalls, supra, but culpable negligence is sufficient, though there may be no design to mislead and deceive to make a return false. And, taking all the evidence into consideration, I find that the returns made for taxation during these years were grossly careless, and I have come to this conclusion largely by a comparison of the returns made by the officers for taxation and the returns by the same officers to the state superintendent of insurance.

Having determined this question the next question relates to the matter of the penalty of 50 per cent. which the auditor is authorized to add in case the returns are false and untrue. The auditor of Medina county followed the wording of the statute in correcting the returns, and ascertaining the true amount that should have been returned, adding 50 per cent. thereto as penalty, and deducting the amount returned; and it is claimed that this was not the meaning of the statute, and the fact that the general assembly of this state, by an act passed April 24, 1893, Ohio Laws, vol. 90, 233, amended the law of April 14, 1886, so as to have the penalty apply only as to the amount ascertained as omitted, is a legislative construction of the act. I do not think that this follows. The court must ascertain the [COPYRIGHT, 1901, BY CARL G. JAHN.]

meaning of the law from the language used. There is very much force in the arguments of plaintiff's counsel that the method employed by the auditor in this case was oppressive and inequitable inasmuch as it places a penalty upon the taxes returned as well as the amounts omitted. It seems very harsh indeed to require this, but this seems to have been the construction given to the act before this amendment in the case of Genins v. Auditor and Treasurer of Belmont county, 18 Ohio St., 534. And to the same effect in the case of Gager, Treas., v. Prout et al., 48 Ohio St., 89. The law in force when these corrections were made by the auditor was clear and unambiguous. For the five years next prior to the tax year when the duplicate was being corrected the auditor was to ascertain, as near a is practicable, the true amount that such tax delinquent should have returned for each one of said five years, and the true amount for the year in which it was being corrected—in this case 1891, and to the amount so ascertained (not including the current year) he shall add fifty per centum. Although admittedly a severe rule up to the time that the statute was amended in 1893, that was the practice, and in the cases referred to the court recognized it as valid.

It was doubtless the injustice of which plaintiff's counsel complained that induced the general assembly to amend the statute and make it more consonant with equity and justice.

The object of sections 2781 and 2782 is not to create an obligation against the taxpayer; they are only a remedy for the collection of what he already owes, to-wit, taxes on all his personal property for every year whether the same was returned for taxation or not. (Lee v. Sturgiss, 6 Ohio St., 153; State ex rel. v. Raine, 47 Ohio St., 447; Gager v. Prout, 48 Ohio St., 89).

Assuming then that the plaintiff owes to the treasurer the simple taxes on the property which it did not return, and that sections 2781 and 2782 were intended to give a remedy for the collection of this debt, it seems to me that I will be doing full justice to the state if the state is made good for what it has lost in this respect, and I think the court has full power to remit the penalty on he sums in fact returned for taxation.

The eighteen upon whom the Tower of Siloam fell were not the chief or only offenders in the Holy City; there were others; and I am quite persuaded that in respect to its returns for taxation, the Ohio Farmers Ins. Co. has done more than many other citizens and corporations in this state have been and are doing in respect to their property when the returns are made for the purpose of taxation; indeed, I think that

there are very many corporations in Ohio that return even a far smaller percentage of the actual value of their assets in money than the plaintiff's returns show in this case. Time was when the wealth of the people consisted largely of real estate, or tangible personal property, goods, wares, merchandise, livestock, agricultural implements, furniture and watches, but times have greatly changed in that respect. By far the largest portion of the wealth of the people is now represented by intangible personal property such as stocks, notes, bonds and mortgages. The rich men of former times in this state were land holders. Now they are stockholders and their property is represented by holdings in railroads, industrial, commercial and banking corporations, evidenced by certificates of stock. The increase in this description of property within the last ten years is marvelous. The true value of such property is often known only by those who possess it, while the facility with which it may be assigned or transferred from hand to hand affords abundant opportunity for its effectual concealment from taxation, so that the evils of unequal taxation are becoming yearly more apparent. These reflections are, perhaps, not strictly in place in a judicial opinion. I indulge in them only as showing the injustice and unfairness of departing in any case from the plain requirement of the constitution, that all property shall be taxed at its true value in money, and not at a percentage of its value. I am, therefore, not disposed to let the axe fall with unjust severity, but will remit the penalty as I have above indicated, and also exclude the estimated or increased value as found by the auditor each year, which will make the amounts so corrected by the court as follows: